Nott, Ch. J.,
delivered the opinion of the court:
The American schooner Betsey was condemned by the French tribunal of commerce, sitting at Basse Terre, Guadeloupe, in J une, 1800, after the abrogation of the treaty of 1778. Her nationality was shown by her register and other papers. Of the illegality of the condemnation of the vessel the court *260 is without doubt. The question involved in the case relates to the condemnation of the cargo.
The Betsey carried a manifest showing of what the cargo consisted and that it was an innocent or commercial cargo, not contraband of war. She carried no document whatever to show its neutrality — that is to say, that it was owned by American citizens, and not by belligerent owners. The claimants rely upon a custom then prevailing in New England ports of vessels engaged in trade with the West Indies, that when the cargo belonged wholly to the owners of the vessel no proof of ownership was carried, and conversely that when no proof of ownership appears to the contrary it is to be inferred that the cargo belonged to the owners of the vessel. The court has recognized this custom in some cases, and, so far as the mere question of ownership is involved, would regard the facts in this case as sufficient prima facie to establish the ownership of the cargo if ownership were the only question to be determined. That is to say, if it were established in this case that the condemnation of the cargo was illegal, the court would regard the owners of the vessel as being the owners of the cargo without further proof.
But it is manifest that the courts of another nation were not bound to take notice of a local custom utterly at variance with the provisions of the treaty of 1778 and the requirements of international law.
Ownership is one thing and neutrality is another. The French prize court was not interested in the question whether the cargo belonged to this or that American citizen, but in the question whether it was the property of neutral or belligerent owners. A prize court of a belligerent power was entitled to have the neutrality of a cargo established. The treat}’- of 1778 was based upon the principle that free ships make free goods; but it also required “that if either of the parties should be engaged in war the ships and vessels belonging to the subjects or people of the other ally must be furnished with sea letter or passports made out according to the form annexed to the treaty,” and likewise that such ships should be provided always with a certificate containing the several particulars of the cargo. (Art. XXY.)
*261 The manifest on board answered this last requirement, so that if the vessel had been seized before the abrogation of the treaty and had carried a proper passport her cargo would have been exempt from seizure. There is no evidence in the case except a register, a manifest, and the local custom above referred to. It is recited in the decree that she had a sea let- . ter not property attested, but it does not appear that the sea letter was that prescribed by the treaty, and if it were it would not have been obligatory, we-think, upon France after the abrogation of the treaty by the Act July 7, 1798 (1 Stat. L., 578), on the part of the United States.
It seems, then, only too apparent, so far as now appears, that the vessel carried nothing to establish the neutrality of the cargo. There is no protest on the part of the master in the case, showing the circumstances of the seizure and condemnation, or that he had asserted the rights of American owners, or offered proof of the neutrality of the cargo, or established any ground upon which this court can hold that the condemnation.was illegal and unjust. The fault was the vessel’s. Upon this evidence, and want of evidence, it must be held that the prize court was justified in decreeing condemnation.
The conclusion of the court is that the owners of the vessel and the insurers of the vessel are entitled to indemnity; that the owners of the vessel carrying presumably a belligerent cargo are not entitled to indemnity for freight earnings; that the owners of the cargo and the insurers of the cargo are not entitled to indemnity; and the case will be so reported to Congress with a copy of this opinion.